Good morning, Your Honor. Patrick McGillicuddy for habeas petitioner James SUEING. May it please the court, I am here today to ask you to reverse the district court's finding that the state court's denial of the defendant's post-conviction relief petition, in which he argued his trial counsel was ineffective for failing to request a lesser included instruction on theft, was an error. The district court determined that the state court's legal determination was not a misapplication of Strickland and also determined that the factual findings of the state court were reasonably determined. I think to start with, since I am arguing that the state court's factual findings were unreasonably made, it should – it would help the court, I think, to – for me to have a brief overview of the facts of the case, which are really quite simple. Mr. SUEING was charged with first degree murder under felony murder statute in Arizona. The underlying felony was robbery. Theft is a lesser included offense of robbery, but it is not an underlying predicate felony for felony murder. The facts, basically, of the case were this. An individual named BULFER was looking for some drugs on East Van Buren Street, which I think some of the judges here are familiar with. It's a very notorious crime-riddled area in Phoenix, Arizona. He was approached or approached a prostitute named Felicia Morgan. She got into his truck. She directed him to go to a parking lot. And in that parking lot, Mr. BULFER was shot and died there at the scene. Ms. Morgan left the jurisdiction for some point in time. She was ultimately contacted in Anaheim, California by a Phoenix detective. In that interview, the detective made it very clear to Ms. Morgan that she was under suspicion for first degree murder and that if she did not cooperate and give the information, she would be charged with first degree murder. At trial, Mr. Sewing's court-appointed counsel, Mr. Hernandez, attacked Ms. Morgan's credibility. He found another prostitute named Vicki Abram. Vicki Abram testified reluctantly, but testified against her. She was charged with first degree murder. She testified, nonetheless, that Felicia Morgan had admitted to her that she had, in fact, shot Mr. BULFER and that one of the guys in the alleyway had come up after the shooting and taken the wallet belonging to Mr. BULFER. Had the jury been properly instructed on the lesser-included offense of theft, they could have found Mr. Sewing not guilty of felony murder. But guilty of the underlying theft conviction. Sotomayor, why wasn't it a perfectly sensible tactical decision on the part of Trial Defense Counsel to focus efforts on Mr. Sewing not being there? Well, if you ---- And isn't there an inconsistency between saying, A, I wasn't there, B, if I was there, I only robbed the guy after he was dead? Well, it would have been a reasonable tactic had the record indicated that that, in fact, was Mr. Hernandez's strategy and tactics to focus on the defense that Mr. Sewing was not there whatsoever. However, part of the evidence that the State relied on in great ---- and gave great weight, which they should do, was the fact that Mr. Sewing's palm prints were found on the outside driver's door as if Mr. Sewing, and I think the State argued this during the trial, that Sewing came up to the vehicle, pulled a gun, demanded the truck. Mr. BULFER tried to get away, and that's when he was shot. Now, at the evidentiary hearing on the post-conviction relief proceeding, Mr. Hernandez was very candid with the trial court and said his ---- the reason that he did not request or withdrew the jury instruction wasn't because of a tactical or strategic reason, it was just that he, for want of a better word, just blew it because of his fatigue and his stress. Now, if he had, in fact, said to the district court, or excuse me, to the State court, that his strategy was to say Sewing was nowhere there, had nothing to do with this, then I think I'd have a less persuasive argument. But I think my argument is persuasive because the State court flew right in the face of that very candid admission and found that Mr. Hernandez's reason for withdrawing the theft instruction was a tactical reason when, in fact, it wasn't. Bolstering that argument, Your Honor, is the fact that Mr. Hernandez, in his opening statement, clearly stated to the jury that Ms. Morgan, the State's witness, was a liar, she was not to be trusted, and that she was the killer. He said repeatedly during the closing and opening portions of his argument that Mr. Sewing did not commit the murder. Now, you can take that to say Mr. Sewing was nowhere to be found and had nothing to do with this, or because the fingerprints were on the vehicle and that left counsel with a very narrow avenue to try and obtain an acquittal for Mr. Sewing. That statement could also be construed to say that, in fact, under Arizona law, Mr. that underlies the felony murder statute. So my argument in the brief and also in the district court was that this was an unreasonable determination of the record by the State trial judge because this court has said in Taylor v. Maddox that the court will take an intrinsic review of the State court's factual findings findings of fact and, in certain circumstances, can disregard those and find that the presumption of correctness doesn't apply. One of the things, one of the basis for doing that in Taylor was when a State court ignores portions of the record to get to a result. Now, the State court judge in this case, in his minute entry and also in the transcript of some of the discussion prior to his ruling, said that, in hindsight, Mr. Hernandez was saying that his reason for not, for withdrawing the theft instruction was tactical. He ignored and never cited in his order or in his oral discussion that Mr. Hernandez clearly owned up to the fact that he just did not, he forgot to ask for that jury instruction. What would have been the evidence to support the theft? The theft? There was, well, a lot of it was circumstantial, to be sure, Your Honor, and it wasn't direct. And I think any criminal defense lawyer will tell you that sometimes you have a very narrow area in which you have to thread the needle. And now Mr. Hernandez stated in both the evidentiary hearing and during the trial itself that his theory that would have supported the theft was that Morgan lied in order to get herself out from under the felony murder conviction and that she was the shooter. And she had testified, and I think it's on her cross-examination. But she had said, and she also told the police during an interview, that someone had come up after the shooting and that the wallet was taken of Mr. Bolfer and that the gun was tossed away in a wall that was kind of surrounding this back parking lot. So the theft? In other words, the answer to my question is what evidence supported the theft? It's her testimony that someone came up and took the money? Well, she made that statement. Ms. Morgan, or excuse me, Ms. Abrams said that Ms. Morgan stated to her that she had shot Mr. Bolfer and that someone had come up afterwards from the shadows of that area and that had come up and taken the wallet and ran away. I think her words were some guy from the alley came up after the shooting. So that's the factual basis, if you will, for the theft. Now, you know, there wasn't a lot of direct evidence. The facts were disputed. Mr. Sewing didn't testify. And this is what the defense lawyer had to work with. But he didn't have that hook that the jury could hang its hat on to find the lesser included. I think I cited a case called Keeble in which Justice Brennan said, well, now look, you know, a jury looks at a real serious case like this and says, you know, I don't know if I want to let this guy go, but I'm not sure if he did it. And Beck versus Alabama has said that in those in those situations, in a capital murder context, it's vital to have a lesser included offense if it's supported by the evidence in the law so that the jury can compromise and not feel that they are under pressure of letting a dangerous murderer go. So it was the factual support for the theft offense conviction was there. I'm not going to stand up here and say it was overwhelming. It was very narrow. And I've said this before, that Mr. Hernandez had a very, very limited window to try and obtain an acquittal for Mr. Sewing, because, as he candidly said, he just forgot to ask or to request that theft instruction. Mr. Sewing suffered prejudice. He's serving a natural life sentence, plus 15 years for the armed robbery. And the theft offense conviction, had it occurred, would have been a term of years, probably less than 10 years. The Arizona sentencing laws are rather complex when it comes to prior convictions and things like that. I will rest. I'd like to reserve three to five minutes, if I have it. I will submit the second issue on the briefs of the Court, please. Roberts, any other questions? Thank you, Counsel. I just wanted to make sure that the prosecution's evidence here was this fellow committed the murder, and the prosecution relies on the witness who testified to that effect. Correct. Plus the fingerprints. Pardon me? Plus the palm prints of Mr. Sewing around the truck. And I think they were on the inside. You said outside. I'm pretty certain that the evidence was that they were on the outside. It probably doesn't make that much difference. Okay. But his defense was the prosecution's witness is lying. Correct. I wasn't there. Well, if you're honor, with all respect to the record, if you read that record carefully, I think Mr. Hernandez walked a very fine line, but he walked it. He argued throughout in his opening, in his closing, and the tone of his questions was that Sewing was not the shooter, but the wallet was taken. And given Ms. Morgan's testimony that was, you know, a little back and forth to be charitable, that a conclusion could be drawn that Mr. Sewing wasn't the You say counsel walked a fine line. I think he walked both sides of the line, actually. For instance, his explanation at one point of the palm prints was they weren't necessarily placed there at the time of the shooting. They could have been on that truck from some other time. Well, Your Honor. I suggest that he's saying, well, they really haven't proved that he was there at all. Well, he, I think in his underlying defense was to cast doubt on the case. There's no doubt about it. And part of that could be an attempt to say, well, look, the state hasn't proven its case at all, but that doesn't foreclose the possibility or the probability. What I'm arguing here was that, you know, he acknowledged the palm prints were there. He had to. He said that directly in the opening statement, that they're not contesting that they were there. But he can ask questions and still make an argument that is a defense to first degree murder. But if you don't have the instruction. Well, I think you're accurate when you say he was simply trying to cast doubt on aspects of the prosecution's case. Right. He did it in a way that wasn't always internally consistent with his own theory. Well. So it's a little hard to say whether not offering a theft instruction was consistent with his defense or not. I think the record supports that it was, and certainly his statement was that he felt he had to have it. Okay. Thank you for your argument. We'll hear from the Director of Corrections at this time. May it please the Court. John Sackleman for Respondents. Let me just start off, Your Honors, by reading the first thing out of the box the defense counsel said to the jurors. We're going to present evidence that it was physically impossible for Mr. Soon to have committed this murder. Basically, it comes down in this case, I think, to the record. And my opponent and I just simply disagree on what the record shows. Our position is that the record absolutely does not show that Vicki Abrams testified to what counsel says that she said. And if I could, I'm just going to go to that and read it to you. Basically, she says, and as a matter of backup, Vicki Abrams was the second prostitute who was brought in to impeach the testimony of the first prostitute, Phylicia Morgan. And she was interviewed twice or three times, once by the state's, by the detective, once by the state's prosecutor, and then once by the attorney, the co-counsel, and his investigator. Basically, Ms. Abrams got up and testified, and then both the detective and the defense investigator got up and testified and said what she had said to them in their previous interviews. As a point of recollection, this testimony was admitted simply to impeach the testimony of Phylicia Morgan. That's how it got in. Obviously, otherwise, it would be an out-of-court statement offered to prove some truth. But it was offered to impeach Phylicia Morgan. And this is what the question was. Did you tell Curtis, the investigator, that Phylicia, the first prostitute, had informed you that she had done the shooting, and by the time the gentleman had arrived to the truck, the shooting was over? I might have said that, or he was already there at the time. Did you give an interview to Vince Imbardino, the county attorney here? Yes. Did you tell Mr. Imbardino the same thing? I might have, or I just probably got confused. I think the guy was there at the time, or he came. He was the one that was in the alley when I said there was a black guy that was there and helped her rob the guy or something. That's it. There's nothing about a guy coming up afterwards and taking a wallet. In fact, there's no mention of a wallet at all. And the only testimony that she might have said that was the defense investigator who was called to the stand. So in essence, we've got double hearsay here. If you're going to try to admit this evidence for the positive aspect of supporting a lesser-included theft instruction, you've got double hearsay. Naturally, the state would have objected to that. So in a sense, if he had asked for the instruction, the state would have objected to it. And the question is, would the trial court have given it? And if he had, would the jurors have believed it? So our position is that they would not have. But if I could, I'm just going to read to you this. This is the double hearsay by the investigator. And I should give you the citations here. This is from April 28, 1998 at page 101. The guys who came to her aid assisted her in removing the trick's money. And she indicated Felicia said they split the money. That's the only part of the record where there's any indication that there might have been a theft involved here as well. And I'm saying this kind of a double hearsay would not have supported the theft instruction. That's our basic position. The evidence simply isn't there. And if I may. So do I understand correctly you're not necessarily arguing that the decision not to submit this instruction or to withdraw it was a tactical decision? Well, Your Honor, I don't think those two things are mutually exclusive. I think that the — Are you saying it could have been tactical, but in any event, the evidence didn't support its — That's exactly right. That's exactly right. And in a sense, I guess going back to — I guess there's two aspects here to this Court's review of the trial court's, the State court's findings of fact. One is the State court said this is what the attorney's tactic was. And let me just read that. It's very short. Defendant — this is the trial court's minute order. Defendant urges that the act of withdrawing the instruction rendered trial counsel's performance defective. When interrogated by the police, defendant claimed that he was not present when the crimes occurred and that he did not even know Ms. Morgan. That was the basis for his defense throughout these proceedings. Defendant's statement set the tone for the defense strategy. And because it is clear that withdrawal of the theft instruction was consistent with that strategy, the Court can draw no conclusion other than that defendant has failed to establish that trial counsel's representation was deficient. In reading through the record and in reading through the hearing that preceded this order, I think that there's simply no possibility of finding that this was an unreasonable determination of the facts in light of the record, either the entire record or in light of the record from the hearing that preceded this order. The statement to law enforcement that he wasn't there, didn't know the witness, came in through the detective's testimony? That came in actually as a, that was video recorded and the video was played for the jurors. Let me just see if there's a few other things that I'd like to talk about here. Based on the argument, that's the focus of the case. Yeah. If there are no other questions, I hate to give up this much time, but I'm just going to go ahead and have a seat. Let me just say one thing. Petitioner's defense was not that a theft occurred instead of an armed robbery. It was that an armed robbery occurred, but that he did not participate. I think that's kind of the kernel of what I'd like to say. Thank you very much. Rebuttal? May it please the Court. I think the State helps Mr. Sewing's argument when Mr. Sakamon referred to Vicki Abrams' testimony. She says, if I have it right now, that I believe Ms. Morgan said, I might have said that the defense, that a guy came up after the shooting and took the wallet. There's the basis for the theft instruction. I just simply disagree with the State's characterization of the record. You're the final say on that. Did that testimony come in for the purpose? I'm sorry, Justice. Does that testimony come in for the purpose of supporting a, is it in for a general purpose or is it just impeaching? Are you talking about Ms. Abrams' second prostitute's testimony? Yeah. What you're just quoting. That came in for the purpose, I believe, for the purpose of showing that Mr. Sewing didn't shoot him and that somebody came up afterwards. Had the theft instruction been there, I think counsel could have argued that that was a scenario that would acquit him. The question is that that's sufficient to have allowed. Yes. Because the counsel can argue the facts and the inferences from the facts. Okay. Thank you very much. Thank both counsel for the arguments. Their case just argued will be submitted.
judges: Canby, Thompson, Hawkins